UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-                                          MEMORANDUM AND ORDER

HECTOR PADILLA,                              06-CR-824 (NGG)

                Defendant.
------------------------------------------------------------X

GARAUFIS, District Judge.

On March 2, 2007, Magistrate Judge Roanne L. Mann issued a Report & Recommendation ("R&R"), recommending that the court deny Defendant Hector Padilla's ("Defendant" or "Padilla") motion to suppress a handgun that he was found to be carrying, allegedly in violation of 18 U.S.C. § 922(g)(1), which makes it a crime for a felon to possess a firearm that has moved in interstate commerce. Judge Mann held a hearing at which the sole witness was Brendan O'Brien, the police detective who stopped Defendant and recovered the gun. Padilla has objected to Judge Mann's R&R.

Because the Defendant has objected to the R&R, the court reviews Defendant's objections *de novo*. 28 U.S.C. § 636(b)(1); see also United States v. Ali, No. 05-cr-687 (NG), 2006 WL 929368, at *8 (E.D.N.Y. Apr. 7, 2006). This court is required to "'consider the record which has been developed before the magistrate [judge] and make [its] own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate [judge].'" United States v. Portmann, 207 F.3d 1032, 1033 (8th Cir. 2000) (quoting United States v. Raddatz, 447 U.S. 667, 675 (1980)). "[T]he court is entitled to 'accept, . . . in whole or in part, the findings or recommendations made by the magistrate [judge].'" Id. (quoting 28 U.S.C. § 636(b)(1)).

Padilla objects to the R&R only on the ground that Detective O'Brien's investigative stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968), was not supported by reasonable suspicion. (See Defendant Letter dated April 20, 2007 ("Def. Let.") at 2 ("Magistrate [Judge] Mann's ruling that walking behind a man, then walking with him, and making a waistband pants adjustment in a high crime areas is . . . reasonable suspicion justifying a stop and frisk fails in any way to meet objective standards for . . . reasonable suspicion.").)

Padilla did not offer any evidence at the hearing before Judge Mann. Nor does Padilla challenge Detective O'Brien's credibility.[1] See Transcript of 2/2/07 Suppression Hearing ("Tr.") at 46 (Padilla's counsel stated that "we have not challenged the police officer's credibility, taking the government's case as put forward[.]").) Although Padilla does not challenge any of the R&R's factual findings, the court has reviewed the hearing record in its entirety.

I agree with Judge Mann's conclusion that the following factors constituted reasonable suspicion and justified the Terry stop and frisk: (1) Padilla was in a high-crime neighborhood in which gun and drug crimes were common; (2) Padilla and the two other men were walking in a poorly lit area at night; (3) the way in which Padilla and the two men were walking single file and then met in the park was suspicious; and (4) Padilla made a gesture in which he appeared to be adjusting a heavy object such as a gun in his waistband. With respect to the gesture,

---

[1] Padilla does assert that "when Detective O'Brien testifie[d] that the men's emergence from the wooded area did not decrease his level of suspicion, clearly there is an internal logical inconsistency with his testimony." (Def. Let. at 5.) Detective O'Brien did testify that his level of suspicion did not decrease when he saw Padilla and two other men leave the wooded lot. (Tr. at 24.) However, there is no logical inconsistency here: simply because Padilla and the two men left the secluded wooded area very quickly in no way means that (1) a crime had not been committed while they were in the wooded area (see Tr. at 23 (a drug deal could have happened in the thirty seconds in which Padilla and the two men were in the wooded area)) or (2) a crime was about to be committed after they left the wooded area (see Tr. at 22 (the men were moving towards another wooded area where a robbery could have taken place)).

2

Detective O'Brien testified that the gesture was consistent with the way in which someone with a gun in his waistband adjusts the position of the gun, a gesture he observes on "[a]lmost a daily basis." (Tr. at 10.)

Padilla cites to United States v. Parker, No. 99-cr-123 (JG), 1999 WL 997282 (E.D.N.Y. Oct. 18, 1999), for the proposition that Detective O'Brien lacked reasonable suspicion for the stop and frisk. Padilla's reliance is misplaced. In Parker, the court held that the following factors did not constitute reasonable suspicion: (1) the defendant made eye contact with the officer and then looked away; (2) the defendant, who was in a taxi that was being followed by the police, turned around between one and three times to look in the direction of the officers; (3) the defendant conspicuously dragged his right arm behind him as he got out of the taxi; (4) when the officer tried to speak to him, the defendant turned his body sideways to block the officer's view of the right side of his body (referred to as "blading") and reached towards the right side of his body; and (5) the defendant refused to show his hands to the officer. Id. at *5. The Parker court concluded that the defendant's refusal to show the officer his hands cannot be a basis for reasonable suspicion as a matter of law because the defendant was under no duty to cooperate. Id. at *8. Similarly, the court found that, under the circumstances, nothing was suspicious about the first, second, and third factors. In Parker, "[t]he heart of the government's argument [was] its reliance on Parker's so-called 'blading' . . . and his simultaneous placement of his hand on his right hip." Id. at *6. The instant case is distinguishable because, as Judge Mann explained, Detective O'Brien had many very valid reasons to be suspicious that Padilla and/or the two men with whom he was stopped had just committed or were just about to commit a crime. See Parker, 1999 WL 997282, at *5 ("Law enforcement officers may subject an individual to an investigative stop if a reasonable suspicion exists 'that the individual is, has been, or is about to

3

be engaged in criminal activity.'") (quoting United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991). Unlike Parker, Detective O'Brien was not relying upon only a suspicious hand gesture.[2]

In short, just as Judge Mann concluded, Detective O'Brien had the reasonable suspicion required to stop and frisk Padilla. I adopt Judge Mann's R&R in its entirety.

SO ORDERED.

Dated: June 22, 2007
Brooklyn, N.Y.

/signed/
NICHOLAS G. GARAUFIS
United States District Judge

---

[2] Padilla also cites *dicta* in United States v. Stone, 73 F. Supp. 2d 441, 446 (S.D.N.Y. 1999), for the proposition that an object in an individual's pocket does not, in and of itself, justify a Terry stop. Irrespective of whether the *dicta* are correct, in deciding to stop Padilla, Detective O'Brien relied upon many factors other than the suspicious hand gesture. As a result, Stone is inapposite.